No. 26-10159-AA

In the
United States Court of Appeals
for the Eleventh Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JAMES OXLEY,
*Defendant-Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 8:25-CR-00019-WFJ-TGW-1

# BRIEF OF THE UNITED STATES

GREGORY W. KEHOE
United States Attorney

SAMANTHA A. PARALIKAS
Assistant United States Attorney
Appellate Division

EMILY C. L. CHANG
Assistant United States Attorney
Appellate Division
USA No. 166
400 W. Washington St., Ste. 3100
Orlando, FL 32801
(407) 648-7500

September 11, 2026

## Statement Regarding Oral Argument

The United States does not request oral argument.

## Table of Contents

Statement Regarding Oral Argument ........ i

Table of Contents ........ ii

Table of Citations ........ iii

Statement of Jurisdiction ........ viii

Statement of the Issue ........ 1

Statement of the Case ........ 1

*Course of Proceedings* ........ 1

*Statement of the Facts* ........ 3

I. Offense Conduct ........ 3

II. Personal History and Characteristics ........ 5

III. Sentencing Hearing ........ 6

*Standard of Review* ........ 13

Summary of the Argument ........ 14

Argument and Citations of Authority ........ 16

The district court did not impose an unreasonable sentence ........ 16

A. Oxley hasn't shown plain error—or any error—on his claim that the district court procedurally erred by failing to adequately explain its chosen sentence. ........ 16

B. Oxley has failed to show that his sentence is substantively unreasonable ........ 22

C. Oxley has failed to establish that the district court committed any plain error by imposing a grossly disproportionate sentence ........ 26

Conclusion ........ 29

Certificate of Compliance with Type-Volume Limitation

Certificate of Service

## Table of Citations

### Cases

*Gall v. United States*,
552 U.S. 38 (2007) .......... 14

*Paroline v. United States*,
572 U.S. 434 (2014) .......... 14, 27

*Rita v. United States*,
551 U.S. 338 (2007) .......... 17–19

*United States v. Aguilar-Ortiz*,
515 F. App'x 817 (11th Cir. 2013) .......... 19

*United States v. Amedeo*,
487 F.3d 823 (11th Cir. 2007) .......... 25

*United States v. Barrington*,
648 F.3d 1178 (11th Cir. 2011) .......... 24, 25

*United States v. Beckles*,
565 F.3d 832 (11th Cir. 2009) .......... 3

*United States v. Butler*,
39 F.4th 1349 (11th Cir. 2022) .......... 24, 25

*United States v. Clay*,
483 F.3d 739 (11th Cir. 2007) .......... 24

*United States v. Cotton*,
535 U.S. 625 (2002) .......... 13

*United States v. Dougherty*,
754 F.3d 1353 (11th Cir. 2014) .......... 22, 23

**United States v. Farley*,
607 F.3d 1294 (11th Cir. 2010) .......... 26, 27, 29

*United States v. Ghertler*,
605 F.3d 1256 (11th Cir. 2010) .......... 17, 19

*United States v. Gonzalez*,
731 F. App'x 836 (11th Cir. 2018) ........................................................ 28

*United States v. Grushko*,
50 F.4th 1 (11th Cir. 2022) ............................................................17–19

*United States v. Irey*,
612 F.3d 1160 (11th Cir. 2010) (en banc) .........................................23, 25

*United States v. Jackson*,
No. 23-14157, 2024 WL 4347375 (11th Cir. Sept. 30, 2024) ...................... 27

*United States v. Johnson*,
451 F.3d 1239 (11th Cir. 2006)........................................................... 27

*United States v. Jones*,
899 F.2d 1097 (11th Cir. 1990)........................................................... 13

*United States v. Lejarde-Rada*,
319 F.3d 1288 (11th Cir. 2003)........................................................... 21

*United States v. Machado-Gonzalez*,
391 F. App'x 842 (11th Cir. 2010) ........................................................ 14

*United States v. McGarity*,
669 F.3d 1218 (11th Cir. 2012).................................................. 14, 26, 27

*United States v. Morrill,*
984 F.2d 1136 (11th Cir. 1993) (en banc) .............................................. 13

*United States v. Mulet*,
689 F. App'x 931 (11th Cir. 2017) ........................................................ 19

*United States v. Olano*,
507 U.S. 725 (1993) ............................................................................ 21

*United States v. Parrado*,
911 F.2d 1567 (11th Cir. 1990)........................................................... 18

*United States v. Pugh*,
515 F.3d 1179 (11th Cir. 2008)........................................................17, 22

*United States v. Raad*,
406 F.3d 1322 (11th Cir. 2005)........................................................... 27

*United States v. Register*,
678 F.3d 1262 (11th Cir. 2012)........................................................... 13

*United States v. Riley*,
995 F.3d 1272 (11th Cir. 2021)........................................................... 25

*United States v. Rodriguez*,
398 F.3d 1291 (11th Cir. 2005)........................................................... 22

*United States* v. Rosales-Bruno,
789 F.3d 1249 (11th Cir. 2015)........................................................... 24

*United States v. Sarras*,
575 F.3d 1191 (11th Cir. 2009).......................................................28–29

*United States v. Shaw*,
560 F.3d 1230 (11th Cir. 2009)........................................................... 23

*United States v. Spearman*,
178 F.4th 1295 (11th Cir. 2026).......................................................... 23

*United States v. Steiger*,
99 F.4th 1316 (11th Cir. 2024) (en banc)...........................................21, 22

*United States v. Turner*,
626 F.3d 566 (11th Cir. 2010)............................................................. 16

*United States v. Valera*,
622 F. App'x 876 (11th Cir. 2015) ...................................................19–21

*United States v. Vandergrift*,
754 F.3d 1303 (11th Cir. 2014)........................................................... 13

*United States v. Walker*,
No. 20-13984, 2023 WL 355099 (11th Cir. Jan. 23, 2023)........................ 26

*United States v. Yuknavich*,
419 F.3d 1302 (11th Cir. 2005)........................................................... 28

**Statutes**

18 U.S.C. § 1466A(b)(1) ........ 1–2

18 U.S.C. § 1466A(d)(4) ........ 2

18 U.S.C. § 2252(a)(1) ........ 1

18 U.S.C. § 2252(a)(4)(B) ........ 1

18 U.S.C. § 2252(b)(1) ........ 1–2

18 U.S.C. § 2252(b)(2) ........ 1

18 U.S.C. § 3231 ........ viii

18 U.S.C. § 3553(a) ........ 1, 12, 14–20, 22–26

18 U.S.C. § 3553(a)(1) ........ 18

18 U.S.C. § 3553(a)(2)(A) ........ 18

18 U.S.C. § 3553(a)(2)(B) ........ 18

18 U.S.C. § 3553(a)(2)(C) ........ 18

18 U.S.C. § 3553(c)(2) ........ 17

18 U.S.C. § 3742(a) ........ viii

28 U.S.C. § 1291 ........ viii

**Rules**

Fed. R. App. P. 4 ........ vii

**Other Authorities**

USSG §2G2.2(b)(5) ........ 9

## Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Middle District of Florida in a criminal case. That court had jurisdiction. *See* 18 U.S.C. § 3231. The court entered the judgment against James Oxley on January 14, 2026, Doc. 59, and he timely filed a notice of appeal two days later, Doc. 61. *See* Fed. R. App. P. 4(b). This Court has jurisdiction over this appeal, *see* 28 U.S.C. § 1291, and authority to examine Oxley's challenge to his sentence, *see* 18 U.S.C. § 3742(a).

## Statement of the Issue

Did the district court impose an unreasonable sentence for Oxley's child-pornography and obscenity convictions?

## Statement of the Case

Oxley is a sexual predator. For years, he sexually abused his young daughter, but she didn't reveal the abuse for years because she was scared. In 2011, Oxley was arrested for possessing child pornography, and he was later convicted in state court and sentenced to five days' incarceration, followed by five years of probation. Then, in 2024, he committed more child-pornography offenses, was prosecuted again (this time federally), and pleaded guilty. Oxley's guidelines range was 180 to 210 months' imprisonment but, after weighing the 18 U.S.C. § 3553(a) factors, the district court varied upward and imposed a 360-month sentence. On appeal, Oxley contends that the court failed to adequately explain its sentence and that his sentence is too long.

### *Course of Proceedings*

A federal grand jury indicted Oxley, charging him with transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1) and (b)(1) (Count One); possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Count Two); and possession of an obscene visual depiction of a minor engaging in sexually explicit conduct, in violation of 18

U.S.C. § 1466A(b)(1) and (d)(4) (Count Three). Doc. 1. Because Oxley had previously been convicted of possessing child pornography, he was subject to enhanced penalties. Doc. 36 at 3–4. Count One was punishable by at least 15 and up to 40 years' imprisonment, and Counts Two and Three were each punishable by at least 10 and up to 20 years' imprisonment. *Id.* at 4.

Oxley pleaded guilty (without a plea agreement) to all three counts. Doc. 43. Given his offense level (35) and criminal-history category (I), his advisory guidelines range was 180 to 210 months' imprisonment. Doc. 70 at 12.[1] (Because Oxley was subject to a mandatory-minimum term of 15 years' imprisonment as to Count One, *see* 18 U.S.C. § 2252(b)(1), the low end of his guidelines range was 180 months. *See* Docs. 36, 60.) The court varied upward and imposed a 360-month sentence (360 months on Count One, which runs concurrently with 240-month sentences on Counts Two and Three). Doc. 70 at 29. After the court solicited objections from the parties, Oxley said he objected "only … to the sentence." *Id.* at 36.

This appeal followed. Doc. 61.

---

[1]We cite all record documents based on the page number that appears in the header generated by the district court's electronic filing system. We cite Oxley's brief using its own page numbers.

## *Statement of the Facts*

### I. **Offense Conduct**[2]

As Oxley was returning from an international cruise in December 2024, Customs and Border Patrol officers discovered child pornography in a "Recently Deleted" folder on his cellphone. PSR ¶¶ 9–11. In an interview with investigators, Oxley admitted that he had saved images from a website shortly before the cruise, then deleted them the day before he disembarked the ship. *Id.* ¶ 11. He told investigators that he believed that the images were AI-generated. *Id.*

Forensic review of Oxley's cellphone revealed 191 images and nine videos that depicted child sexual abuse material (CSAM). PSR ¶ 12. It appeared that Oxley had modified more than 1,000 images by zooming in on the genitals of the child depicted. *Id.* In addition, investigators found about 164 CSAM images that were AI-generated. *Id.* All the images and videos in the "Recently Deleted" folder were still readily available to the phone user, and some of the images and videos dated back to 2023. *Id.* ¶ 15.

Among the CSAM files Oxley possessed was a photograph depicting a

---

[2]Facts in a PSR are undisputed and deemed admitted if neither party objects to them before the sentencing court with specificity and clarity. *United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009). Neither party objected to any PSR facts at sentencing. Doc. 70 at 5, 12.

girl between ages five and eight, standing nude with her genitals exposed to the camera and manipulating her genitals with her finger. PSR ¶ 13. Oxley also had a three-second video that depicted a naked female child between ages three and five, lying on her back and moving up and down. *Id.* ¶ 14. By the motion of her body, investigators believed that another individual was penetrating the child. *Id.* One of the AI-generated images that Oxley possessed depicted a prepubescent girl between ages eight and eleven with ejaculate on her face. *Id.* ¶ 13.

Ninety-one of the images Oxley possessed were from 38 (total) series of known CSAM. PSR ¶ 17. One series victim said in her impact statement that it had been "impossible for [her] to find peace" about her abuse because she knows that "images of [her] abuse and exploitation continue to be observed and shared without [her] permission." *Id.* ¶ 19. Another victim said that her realization that people sought and shared images of her abuse deepened her sense of violation and loss of control because she knew that the cycle of violation would never end. *Id.* ¶ 20. That victim said that the ongoing circulation of CSAM that depicts her profoundly disrupts her sense of safety and privacy. *Id.* ¶ 21. Another victim said, "It is hard to describe what it feels like to know that at any moment, anywhere, someone will be looking at … pictures of me as a child being sexually abused and getting sick gratification

from it. It's like I am being abused over and over again." *Id.* ¶ 23. Other victims from identified series expressed similar sentiments. *Id.* ¶¶ 24–29.

## II. Personal History and Characteristics

Oxley said that even though his family of origin outwardly appeared to be a "happy family," it was dysfunctional. PSR ¶ 57. His father was emotionally distant, and his mother—who struggled with substance abuse—physically and emotionally abused him. *Id.* ¶ 58. At age 18, he left home to escape his volatile home life, and he was estranged from his family for 17 years after he was disfellowshipped from the Jehovah's Witness community. *Id.* ¶ 59. He reported having a strained relationship with his parents but said that they had remained positive and supportive of him. *Id.* ¶ 60. Oxley has been married three times and has two grown children. *Id.* ¶¶ 62–64.

Oxley reported that his oldest brother sexually abused him when Oxley was seven to eleven years old. PSR ¶ 68. He also said that he had various mental-health issues, including borderline personality disorder, bipolar disorder, and major depression. *Id.* ¶ 69.

Oxley attended some college before leaving to work as a construction foreman and painter. PSR ¶¶ 78, 80. He was also in the Navy for three months before he received a "general discharge" for "failure to adapt to military life." *Id.* ¶ 82.

Oxley was 53 years old when he was sentenced in 2026. PSR at 3. Fifteen years earlier, in 2011, he had been arrested for possession of child pornography, in violation of Florida law. *Id.* ¶ 51. He pleaded *nolo contendere* and was adjudicated guilty for three counts of possession of child pornography, and he was sentenced to five days' incarceration and five years of probation. *Id.* He was granted early termination of probation in June 2015. *Id.*

In April 2025, investigators interviewed Oxley's daughter, N.O. PSR ¶ 48. N.O. said that Oxley had sexually abused her for "as long as [she] [could] remember" until she was about seven years old. *Id.*; *see* PSR ¶ 51. N.O. recalled that Oxley would use his hand and mouth to stimulate her clitoris. *Id.* ¶ 48. Oxley also had her do the same with his penis. *Id.* N.O. said that after Oxley was arrested in 2011, she lied to the police when they questioned her. *Id.* She said that she suffers from PTSD due to Oxley's abuse and that she becomes very emotional when she talks about it. *Id.* She explained, "It's really taken a lot of work for me to even talk about it." *Id.* She said that she had always felt that she could never tell anyone, but she also felt that she needed to talk about it to stand up for herself. *Id.*

## III. Sentencing Hearing

At the outset of the sentencing hearing, the court confirmed that it had read Oxley's "very good, trenchant sentencing memorandum" and

psychosexual evaluation. Doc. 70 at 4. In that memorandum, Oxley had requested a sentence at the low end of his guidelines range. Doc. 51 at 2. Oxley urged the court to measure his criminal conduct against his "overall life," including the abuse from his parents and the sexual abuse from his older brother that had caused him to move out as a teenager. *Id.* at 6–7. Oxley said that he had resorted to prostitution to supplement his income and support himself for a time, and that when he returned home, he was ostracized. *Id.* at 8–9. Oxley also highlighted his lifelong mental-health struggles. *Id.* at 9.

Oxley pointed out that because the probationary period for his prior possession-of-child-pornography conviction was terminated early, his court-ordered sex-offender treatment was cut short, too. Doc. 51 at 2, 9. Consequently, he reasoned, "the root, or why, behind his having child pornography was never adequately addressed and as such, his probability of recidivating was always going to be increased." *Id.* at 2. He contended that "without appropriate treatment to address his issues, his life continued as a rudderless ship of sorts, spiraling again to the point where he finds himself here, facing further charges." *Id.* at 10. He noted that he saw a counselor "for some time," and that was very helpful, but he lost access to that counselor when he lost his job and insurance. *Id.* at 11. As a result, he said, his "psychological condition deteriorated like a marble off a table," leading to the

instant offenses. *Id.*

Oxley attached to his sentencing memorandum a psychosexual evaluation in which a psychologist concluded that Oxley had a low-to-moderate risk of reoffending. Doc. 51 at 11. Oxley contended that his "real struggle is with internet-based material," so his "profile most closely aligns with a class of offenders whose primary risk can be managed with evidence-based cognitive behavioral interventions, digital accountability measures, and long-term clinical oversight." *Id.* at 12. Oxley emphasized his remorse and desire for help and pointed out that he had not distributed child pornography. *Id.* at 12–13, 15. He submitted that although he was "a failed product of an incomplete rehabilitative system," he still had "capacity for rehabilitation." *Id.* at 13. Oxley further argued that a long prison term would not deter him from recidivating because "it does not deter others." *Id.* at 16. Finally, he argued that "a shorter sentence would allow him to return to society in some form, enter into the treatment he so desperately needs, and try to live out the remainder of life he will have upon his release." *Id.* at 18.

In calculating Oxley's guidelines offense level, the court applied enhancements because Oxley possessed CSAM that depicted prepubescent minors and the sexual abuse of a toddler, he used a computer to commit the offense, and his offense involved 600 or more images. PSR ¶¶ 35–36, 38–39.

He also received a five-level enhancement under USSG §2G2.2(b)(5) because he had sexually abused N.O., his daughter, multiple times when she was a child. PSR ¶ 37. Oxley received offense-level reductions because he accepted responsibility and his offense conduct was limited and did not involve distribution. *Id.* ¶¶ 45–46; Doc. 70 at 12. His guidelines range was 168 to 210 months' imprisonment, but because of the mandatory minimum for Count One, his final guidelines range was 180 to 210 months. Doc. 36 at 4; Doc. 70 at 12, 23.

Although the child pornography in Oxley's offenses of conviction did not depict N.O., the court received a statement from her over Oxley's objection, noting that "the law ordains a very broad and liberal consideration of victim testimony." Doc. 70 at 14. N.O. told the court that when Oxley sexually abused her as a child, she had "no idea what sex was because [she] was a child younger than seven years old." *Id.* at 15. She explained that Oxley had been physically violent and verbally abusive toward her and her sister. *Id.* Given the sexual abuse and ongoing violence, N.O. "learned pretty quickly that survival … was about pleasing [Oxley] and doing everything he wanted [her] to do and expected." *Id.* at 15–16. She added that she had been a "perfect victim because [she] learned to do all of that." *Id.* at 16.

N.O. recalled that when Oxley was first arrested for possession of child

pornography (in 2011), she was under seven years old. Doc. 70 at 16. At that time, investigators asked "very plainly" whether Oxley had ever abused her. *Id*. N.O. said that she protected him then by not telling the truth because she didn't know any better. *Id*. She also explained that Oxley had "prepared [her] for this very well" by threatening her, saying, "If you tell anyone, you'll be in big trouble, and no one can ever know about this." *Id*. She added that because she protected him, she was "forced to grow up with him" and "be his victim once again." *Id*. N.O. said that protecting Oxley out of fear was one of her biggest regrets. *Id*.

N.O. explained that she later realized that Oxley had taken away her innocence and preyed on her when she was "completely dependent on him" and did not yet "realize[] what the word 'no' really meant." Doc. 70 at 17. She became extremely depressed, and she "was reminded about it all the time because [she] was living with him." *Id*. Plus, she feared what he might do to her if she ever told anyone, and she felt "like people wouldn't look at [her] the same" if they knew. *Id*. She also worried that people wouldn't believe her because Oxley was manipulative. *Id*.

N.O. never intended to tell anyone about Oxley's abuse, but her therapist finally "squeezed the secret out" just before she turned 18. Doc. 70 at 17–18. And after his arrest for the instant offenses, she felt "comfortable to

start sharing [her] story." *Id.* at 18. She added, "I feel so much safer now that I can talk about it and he can't hurt me." *Id.*

N.O. discussed how Oxley's abuse had shaped her life, telling the court that she suffered from dissociation and depression and that at times she felt like she was "better off dead." Doc. 70 at 17–18. She suffers from PTSD triggers that are so intense that they derail entire weeks and months. *Id.* at 18. She feels constant anger and her rage toward Oxley "eats [her] alive at times" because she cannot understand how Oxley could have hurt his own child in such a way. *Id.* at 18–20.

In advocating for a 210-month sentence, the prosecutor noted that Oxley's "desire and interest in minors has not abated over time because here we are again … with similar charges of possessing child sexual abuse material." Doc. 70 at 21–22. The prosecutor pointed out that Oxley's recidivism "demonstrate[d] his dangerousness." *Id.* at 22. The prosecutor also emphasized that, like N.O., the sexually abused children depicted in Oxley's child-pornography collection suffered a "lifetime of harm." *Id.* The prosecutor stressed that Oxley's contribution to that harm warranted "just punishment" from the court. *Id.*

Defense counsel requested a 180-month sentence, echoing many points previously set forth in Oxley's sentencing memorandum, including his mental-

health struggles, incomplete sex-offender treatment, childhood physical and sexual abuse, and difficult familial relationships. Doc. 70 at 23–25. In his allocution, Oxley expressed remorse to his parents, wife, victims, and the court. *Id*. at 26–27.

The court sentenced Oxley to concurrent terms of 360 months, 240 months, and 240 months, respectively, for Counts One, Two, and Three. Doc. 70 at 29. The district court confirmed that it had reviewed the PSR and "carefully considered the guidelines." *Id*. at 28. The court also confirmed that, "after considering the Advisory Sentencing Guidelines and all the factors" in § 3553(a), it found that the sentence imposed was "sufficient but not greater than necessary to comply with the statutory purposes of sentencing." Doc. 70 at 34. The court explained that it had varied upward to reflect the seriousness of Oxley's offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes of Oxley. *Id*. The court underscored Oxley's history and characteristics, including his sexual molestation of N.O.—whose testimony the court "credit[ed] 100 percent"—and the fact that Oxley had multiple records of child pornography-related conduct. *Id*. at 35. The court specifically found that Oxley was "a pedophilic predator" who was "unable to control himself" and posed a "continual and ongoing danger, the significance and seriousness of which

we've seen in this courtroom today." *Id*. The court added that the purpose of the sentence was to "restrict that" danger "within reasonable possibility." *Id*.

***Standard of Review***

Ordinarily, this Court reviews the procedural reasonableness of a sentence under an abuse-of-discretion standard. *United States v. Register*, 678 F.3d 1262, 1266 (11th Cir. 2012). But if a defendant fails to object to the procedural reasonableness at sentencing, this Court reviews only for plain error. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014). Under plain-error review, he must show: (1) an error, (2) that is plain, (3) that the error affected his substantial rights, and (4) that the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Id*. (quoting *United States v. Cotton*, 535 U.S. 625, 631 (2002)).

Oxley failed to adequately preserve his procedural-reasonableness challenge at sentencing. Although he objected to "the sentence," Doc. 70 at 36, he did not challenge the adequacy of the district court's explanation of the variance. His objection therefore did not "serve the dual purpose of permitting the district court to correct on the spot any error it may have made and of guiding appellate review" and is subject to plain-error review. *See United States v. Jones*, 899 F.2d 1097, 1102 (11th Cir. 1990), *overruled on other grounds by United States v. Morrill,* 984 F.2d 1136 (11th Cir. 1993) (en banc); *see*

*also United States v. Machado-Gonzalez*, 391 F. App'x 842, 845 (11th Cir. 2010) (applying plain-error review to procedural challenge on appeal where defendant objected that his sentence was substantively unreasonable, but "did not mention the § 3553(a) factors or the court's failure to consider them").

Oxley preserved his substantive-reasonableness challenge, so this Court reviews it under "a deferential abuse-of-discretion standard." *See Gall v. United States*, 552 U.S. 38, 41 (2007).

This Court ordinarily "review[s] *de novo* the legality of a sentence under the Eighth Amendment." *United States v. McGarity*, 669 F.3d 1218, 1255 (11th Cir. 2012), *abrogated on other grounds by Paroline v. United States*, 572 U.S. 434 (2014). But Oxley did not object to his sentence on Eighth Amendment grounds, so this Court should review that aspect of his challenge for plain error. *McGarity*, 669 F.3d at 1255 n.56.

## Summary of the Argument

Oxley has failed to show that the district court imposed an unreasonable sentence. First, Oxley hasn't shown plain error—or any error—on his claim that the district court procedurally erred by failing to adequately explain its chosen sentence. The record and the court's explanation for its chosen sentence show that the court considered the parties' arguments and the relevant § 3553(a) factors when imposing Oxley's sentence. Indeed, in

explaining the upward variance, the court enumerated six § 3553(a) factors that Oxley's guidelines range failed to adequately account for. The court also specified as aggravating factors Oxley's prior child-pornography conviction and his sexual abuse of his daughter. Oxley has failed to show that the court committed any procedural error, much less one that is plain.

Second, Oxley's has not shown that his sentence is substantively unreasonable given the record and the § 3553(a) factors. Oxley was convicted of a child-pornography offense in 2012. And although he was never charged for it, the court credited testimony that Oxley also sexually abused his young daughter for years before that. Then, in 2024, he committed the instant child-pornography offenses. Given this history, the court found that Oxley was a "pedophilic predator" who was "unable to control himself." And, after weighing the § 3553(a) factors, the court decided that Oxley's serial sexual offenses against children outweighed his mitigating factors. That decision was well within the district court's discretion, and Oxley hasn't shown otherwise.

Finally, Oxley has failed to establish that the district court committed any plain error by imposing a grossly disproportionate sentence. Oxley bears the burden of proof to make a threshold showing that his sentence is grossly disproportionate to the offense committed—and he has failed to carry that burden. He has not identified any on-point precedent in this Court or the

Supreme Court that supports his view that his sentence is unconstitutionally excessive. Thus, he has failed to show that the district court plainly violated the Eighth Amendment by sentencing him to 360 months' imprisonment. This Court should affirm his sentence.

## Argument and Citations of Authority

### The district court did not impose an unreasonable sentence.

In reviewing the reasonableness of a sentence on appeal, this Court follows a two-step process: it must first determine whether the sentence is procedurally reasonable, then it must determine whether it is substantively reasonable under the totality of the circumstances. *United States v. Turner*, 626 F.3d 566, 573 (11th Cir. 2010). Oxley bears the burden of showing that his sentence is unreasonable in light of the record and the § 3553(a) factors. *See id.* As explained below, he has not met that burden here.

### A. Oxley hasn't shown plain error—or any error—on his claim that the district court procedurally erred by failing to adequately explain its chosen sentence.

In reviewing a sentence for procedural reasonableness, this Court must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the

chosen sentence—including an explanation for any deviation from the Guidelines range." *United States v. Grushko*, 50 F.4th 1, 17 (11th Cir. 2022) (quoting *United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008)). Oxley complains that the district court erred by failing to adequately explain its imposition of a 360-month sentence—which was 150 months above the high end of Oxley's guidelines range.[3] *See* Oxley's brief at 15–16, 19–20.

When a district court imposes a nonguideline sentence, it must "state in open court" the "specific reason for the imposition of" that sentence. 18 U.S.C. § 3553(c)(2). But § 3553(c)(2) does not require "a full opinion in every case." *Rita v. United States*, 551 U.S. 338, 356 (2007). "The appropriateness of brevity or length, conciseness or detail," "depends upon circumstances," because "[t]he law leaves much, in this respect, to the judge's own professional judgment." *Id*. The court need not "articulate its consideration of each individual § 3553(a) factor, so long as the record reflects the court's consideration of many of those factors." *United States v. Ghertler*, 605 F.3d 1256, 1262 (11th Cir. 2010) (internal quotation marks and citation omitted). "It is sufficient for the district judge to 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis

[3] His sentence was thus 71% (not 58%) above the high end of his guidelines range. *See* Oxley's brief at 16.

for exercising his own legal decisionmaking authority.'" *Id.* (quoting *Rita*, 551 U.S. at 356). "Simply stated, a sentencing court should be mindful of the 'factors to be considered in imposing a sentence' when explaining its reasons for imposing a particular sentence and should tailor its statement accordingly." *United States v. Parrado*, 911 F.2d 1567, 1573 (11th Cir. 1990).

Oxley cannot show any error, let alone one that was plain. The court confirmed at the outset of the sentencing hearing that it had reviewed Oxley's sentencing memorandum, which thoroughly laid out his mitigation arguments. Doc. 70 at 4. And after hearing testimony from a victim, arguments from both parties, and Oxley's allocution, *id*. at 14–28, the court confirmed that it had considered both the guidelines and the § 3553(a) factors before concluding that its sentence would be sufficient, but not greater than necessary, to achieve the statutory purposes of sentencing. *Id*. at 34.

The court added that it had imposed an upward variance based on the nature and circumstances of Oxley's offense (§ 3553(a)(1)); his history and characteristics (*id*.); and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment (§ 3553(a)(2)(A)), afford adequate deterrence to criminal conduct (§ 3553(a)(2)(B)), and protect the public from further crimes of Oxley (§ 3553(a)(2)(C)). Doc. 70 at 34–35. The court also underscored its finding that

Oxley is a "pedophilic predator" whose repeated sexual offenses (in terms of both child pornography and molestation of his daughter) showed that he "represents a continual and ongoing danger." *Id*. at 35.

This explanation was more than adequate. It shows that the court considered the relevant factors when imposing Oxley's sentence. *See Ghertler*, 605 F.3d at 1262. The court's comments also show that it "considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decisionmaking authority." *See Rita*, 551 U.S. at 356.

Thus, Oxley has not shown that the court procedurally erred in imposing Oxley's sentence. *See United States v. Mulet*, 689 F. App'x 931, 934 (11th Cir. 2017) (explanation for upward variance was adequate where court "discussed the nature and circumstances of the offense and seriousness of the conduct" and defendant's history and characteristics, "noted the need for the sentence to promote respect for the law," and stated that sentence provided just punishment, promoted deterrence, and protected the public from defendant's future crimes); *see also United States v. Aguilar-Ortiz*, 515 F. App'x 817, 818 (11th Cir. 2013) (declining to find sentence that was double the high-end of the guidelines to be "procedurally unreasonable because the district court acknowledged on the record that it considered all of the § 3553(a) factors.").

In arguing otherwise, Oxley cites *Valera*, but that case doesn't help him.

*See* Oxley's brief at 19–20 (citing *United States v. Valera*, 622 F. App'x 876 (11th Cir. 2015)). Before sentencing Valera, the district court did not state the applicable guidelines range, acknowledge the § 3553(a) factors, or allow either party to present arguments about a recommended sentence. *Valera*, 622 F. App'x at 878–79. And although the district court varied upward, this Court could not "tell from the judge's reasoning whether he found that Valera's particular case was outside of the heartland of cases covered by the guideline range, whether this was a 'mine-run' case for which the guideline range fails properly to reflect § 3553(a), or whether the sentence reflect[ed] some combination of grounds." *Valera*, 622 F. App'x at 881.

In contrast, here, district court spelled out its specific reasons for the upward variance—enumerating various § 3553(a) factors that Oxley's guidelines range failed to adequately account for. Doc. 70 at 34–35 (listing the seriousness of Oxley's offenses; his history and characteristics; and the need to promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from his further crimes). And to avoid doubt about its rationale for the upward variance, the court specified as aggravating factors Oxley's prior child-pornography conviction and his sexual abuse of his daughter—both of which showed that Oxley was "a pedophilic predator" who was "unable to control himself" and posed a "continual and ongoing danger."

*Id*. Indeed, those facts underscored that Oxley's overall conduct was "outside of the heartland of cases covered by the guideline range" for child-pornography offenses. *See Valera*, 622 F. App'x at 881.

In sum, Oxley has not shown any error—and he certainly hasn't carried the heavy burden of showing plain error warranting relief. As we've just explained, he has not shown that any error was clear and obvious. *See United States v. Olano*, 507 U.S. 725, 734 (1993). He has cited no on-point precedent establishing that a district court must say more than was said here. For that reason alone, his claim fails. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) ("[W]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it.").

And even if there were an error, Oxley has not established that it affected his substantial rights. A district court's failure to properly explain the reasoning behind its sentence "does not affect a defendant's substantial rights if the record is clear enough to allow meaningful appellate review of the sentence." *United States v. Steiger*, 99 F.4th 1316, 1325 (11th Cir. 2024) (en banc). The record here is clear enough, as discussed above, and Oxley has not proven otherwise. *See Olano*, 507 U.S. at 734 ("It is the defendant rather than the Government who bears the burden of persuasion with respect to

prejudice.”).

Finally, with respect to the fourth prong, any error here did not “seriously affect[ ] the fairness, integrity, or public reputation” of the judicial proceedings. *See Steiger*, 99 F.4th at 1325. A reasonable person familiar with this sentencing record would understand that the court imposed its chosen sentence to account for the grave danger that Oxley posed to children, his proven inability to control his behavior, and the resulting need to protect the public from him. *See id*. at 1326–37 (assessing what “[a] reasonable person familiar with the sentencing record would understand”). “[P]lain error review should be exercised sparingly, and only in those circumstances in which a miscarriage of justice would otherwise result.” *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005) (internal quotation marks and citations omitted). No miscarriage of justice would result here. Oxley thus has not shown that the district court committed procedural error, much less plain error. *See Pugh*, 515 F.3d at 1189 (party challenging sentence bears burden of showing that it is unreasonable).

**B. Oxley has failed to show that his sentence is substantively unreasonable.**

Oxley has the burden of showing that his sentence is unreasonable given the record and the § 3553(a) factors. *United States v. Dougherty*, 754 F.3d 1353,

1361 (11th Cir. 2014). "Because of its institutional advantage in making sentence determinations, … a district court has considerable discretion in deciding whether the § 3553(a) factors justify a variance and the extent of one that is appropriate," and this Court must give the district court's decision "due deference." *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009) (internal quotation marks and citations omitted).

A district court abuses its considerable discretion and imposes a substantively unreasonable sentence only when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Spearman*, 178 F.4th 1295, 1311 (11th Cir. 2026) (quoting *United States v. Irey*, 612 F.3d 1160, 1188–89 (11th Cir. 2010) (en banc)). As for the third way the court can abuse that discretion, "a district court commits a clear error of judgment when it considers the proper factors but balances them unreasonably." *Id*. This Court will vacate a sentence "if, but only if, [it is] left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the section 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (internal quotation marks omitted). "[I]t is only the rare sentence

that will be substantively unreasonable." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (internal quotation marks omitted).

Oxley asserts that his sentence is substantively unreasonable because the court gave too little weight to his mitigating factors and too much weight to N.O.'s testimony, which concerned events that were "unrelated to the crime that [Oxley] plead[ed] to." *See* Oxley's brief at 17–18, 20–22. That argument boils down to a disagreement about how the court weighed the § 3553(a) factors, but "[t]he weight given to each factor in § 3553(a) is 'a matter committed to the sound discretion of the district court.'" *United States v. Barrington*, 648 F.3d 1178, 1204 (11th Cir. 2011) (quoting *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007)). Furthermore, "a district court may attach great weight to one § 3553(a) factor over others." *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022).

After confirming that it had considered the guidelines and all the § 3553(a) factors, the court justified its upward variance by citing Oxley's yearslong molestation of his daughter when she was very young, the fact that he had "a multiple record … of child-pornography conduct," and the court's finding that Oxley was a "pedophilic predator" who was "unable to control himself." Doc. 70 at 34–35. Thus, the district court found, after weighing the § 3553(a) factors, that Oxley's serial sexual offenses against children

outweighed his mitigating factors. *Id*. That decision was well within the district court's discretion, *see Barrington*, 648 F.3d at 1204, and Oxley has not shown that the court imposed a sentence that was "outside the range of reasonable sentences dictated by the facts of the case," *see Irey*, 612 F.3d at 1190. Also, Oxley's 360-month sentence (i.e., 30 years) is far shorter than the statutory maximum of 80 years, and the fact that "an upward variance sentence is well below the statutory maximum indicates that it is reasonable." *United States v. Riley*, 995 F.3d 1272, 1278 (11th Cir. 2021) (internal quotation marks omitted).[4]

"[A] sentencing court may impose an upward variance based upon uncharged conduct as it relates to the history and characteristics of the defendant, as well as the need to promote respect for the law, afford adequate deterrence, and protect the public." *Butler*, 39 F.4th at 1355. Therefore, the district court did not abuse its discretion in heavily weighing Oxley's abuse of

[4]To the extent that Oxley complains that the district court "did not address" his mitigating factors, *see* Oxley's brief at 21, the court didn't have to. Even where "the district court's sentencing order made no mention of evidence that arguably mitigated in [a defendant's] favor under § 3553(a), [this Court] cannot say that the court's failure to discuss this 'mitigating' evidence means that the court erroneously 'ignored' or failed to consider this evidence in determining [his] sentence." *See United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007). Indeed, the record shows that the court did consider Oxley's mitigating factors. *See* Doc. 70 at 4, 23–26, 28; *see generally* Doc. 51.

N.O., even though that was uncharged conduct. *See* Oxley's brief at 22. "Even if the court gave considerable weight to the uncharged conduct, this Court commits the weight of each § 3553(a) factor to the district court." *United States v. Walker*, No. 20-13984, 2023 WL 355099, at *2 (11th Cir. Jan. 23, 2023). The district court did not abuse its discretion by imposing a substantively unreasonable sentence.

### C. Oxley has failed to establish that the district court committed any plain error by imposing a grossly disproportionate sentence.

Finally, Oxley attacks his sentence as "disproportionately severe" and "grossly disproportionate to the gravity of the offense charged"—which is an Eighth Amendment claim—for the first time on appeal. *See* Oxley's brief at 18–19. But that claim fails, too.

This Court has recognized that successful challenges to a sentence as grossly disproportional—in violation of the Eighth Amendment—are reserved for "extraordinary" and "exceedingly rare situations." *United States v. Farley*, 607 F.3d 1294, 1343–44 (11th Cir. 2010). Apart from the context of capital punishment, there have been few successful challenges to the proportionality of sentences due to the level of deference this Court "accords Congress's authority to determine the types and limits of punishments for crimes." *United States v. McGarity*, 669 F.3d 1218, 1256 (11th Cir. 2012) (internal quotation

marks omitted), *abrogated on other grounds by Paroline v. United States*, 572 U.S. 434 (2014).

"Indeed, [this Court] ha[s] 'never found a term of imprisonment to violate the Eighth Amendment, and outside the special category of juvenile offenders the Supreme Court has found only one to do so.'" *United States v. Jackson*, No. 23-14157, 2024 WL 4347375, at *4 (11th Cir. Sept. 30, 2024) (quoting *Farley*, 607 F.3d at 1343). Moreover, "a sentence within the statutory limits generally does not violate the Eighth Amendment." *United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006).

For disproportionality challenges under the Eighth Amendment, "the burden of proof is on the defendant to make a threshold showing that his sentence is grossly disproportionate to the offense committed." *McGarity*, 669 F.3d at 1256 (internal quotation marks omitted). "If that threshold is satisfied, the court must compare the defendant's sentence to sentences imposed in the same and other jurisdictions for the commission of the same crime." *Jackson*, 2024 WL 4347375, at *4 (citing *United States v. Raad*, 406 F.3d 1322, 1324 (11th Cir. 2005)).

Oxley hasn't made the requisite threshold showing here, so he has failed to establish plain error. For starters, he has not identified any on-point precedent in this Court or the Supreme Court that supports his view that his

sentence is unconstitutionally excessive. Indeed, in a prior unpublished opinion, a panel of this Court rejected a gross-disproportionality claim asserted by a defendant who, like Oxley, committed child-pornography offenses and sexually abused a child—but received a much more severe sentence. *See United States v. Gonzalez*, 731 F. App'x 836, 837–39 (11th Cir. 2018) (district court did not plainly err in sentencing first-time offender to 1200 months' imprisonment for child-pornography offenses; that sentence was not plainly grossly disproportionate because defendant was a prolific consumer of child pornography and trial witness testified that defendant digitally penetrated and raped her when she was nine).

Moreover, Oxley's offense conduct was reprehensible. As this Court has observed before, "[a] child somewhere was used to produce the images downloaded by [the defendant], in large part, because individuals like [Oxley] exist to download the images." *See United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005). Not only that, Oxley modified more than 1,000 images by zooming in on the genitals of the child depicted. *See* PSR ¶ 12. Given the nature and severity of his conduct, Oxley's sentence is consistent with this Court's previous recognition that "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses, and courts have upheld lengthy sentences in these cases as substantively reasonable." *United*

*States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009). Thus, he has failed to show that the district court plainly violated the Eighth Amendment by sentencing him to 360 months' imprisonment. Because Oxley has failed to make the threshold showing of gross disproportionality, there is no need for comparative analysis within and between jurisdictions. *See Farley*, 607 F.3d at 1342. This Court should affirm his sentence.

## Conclusion

The United States requests that this Court affirm the judgment and sentence of the district court.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

SAMANTHA A. PARALIKAS
Assistant United States Attorney
Appellate Division

By: *s/ Emily C. L. Chang*
EMILY C. L. CHANG
Assistant United States Attorney
Appellate Division
USA No. 166
Street Address
Orlando, FL 32801
(407) 648-7500
Emily.Chang@usdoj.gov

## Certificate of Compliance with Type-Volume Limitation

This brief, which contains 6722 countable words under 11th Cir. R. 32-4, complies with Fed. R. App. P. 32(a)(7)(B).

## Certificate of Service

I certify that on September 11, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

DARLENE CALZON BARROR, ESQ.
*Counsel for James Oxley*

*s/ Emily C. L. Chang*
EMILY C. L. CHANG
Assistant United States Attorney